**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Brittany Pearson,<br><br>Petitioner,<br><br>v.<br><br>Warden Robert Robertson,[1]<br><br>Respondent. | ) | Case No. 2:25-cv-05642-MGL-MGB<br><br>**REPORT AND RECOMMENDATION** |

Brittany Pearson, a *pro se* state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. Nos. 1.) This matter is now before the Court on Respondent's Motion for Summary Judgment (Dkt. No. 16.) Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review the Petition and submit findings and recommendations to the United States District Judge. For the reasons discussed herein, the undersigned **RECOMMENDS** that Respondent's summary judgment motion (Dkt. No. 16) should be **GRANTED**, and that the Petition should be **DISMISSED**.

## RELEVANT BACKGROUND

Petitioner is currently housed in the Leath Correctional Institution of the South Carolina Department of Corrections. Petitioner was indicted by a Spartanburg County grand jury in March

[1] It is well-settled that a § 2254 petition "must name as respondent the state officer who has custody" of the petitioner. Rule 2(a), Rules Governing § 2254 Cases; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). The custodian is typically "the person with the ability to produce the prisoner's body before the habeas court." *See McLean v. Vereen*, No. 2:18-cv-3600-RMG, 2019 WL 2514728, at *1 (D.S.C. June 18, 2019) (citing *Rumsfeld*, 542 U.S. at 434–35); *see also Rodriguez v. Joyner*, No. 5:18-cv-2294-MGL-KDW, 2020 WL 6785645, at *1 (D.S.C. Nov. 18, 2020) (noting that ascertaining the proper respondent is critical because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody") (citing *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494–95 (1973)). Petitioner's filings indicate that she is currently housed at Leath Correctional Institution. As such, the Warden of Leath Correctional Institution is the proper Respondent in this habeas action.

2015 for possession of a firearm during commission of or attempt to commit a violent crime, and in February 2016 for murder. (Dkt. No. 15-2 at 66–71.) The Honorable J. Derham Cole presided over the jury trial on these charges, which began on May 23, 2016. (Dkt. No. 15-1 at 1–334.) At trial, Petitioner was represented by Thomas J. Quinn. (*Id.*) Timi Poulos, Russell D. Ghent, and Grady Baldwin Anthony appeared on behalf of the State. (*Id.*) At trial,[2] the State presented evidence in support of its theory of the crime, which was essentially that Petitioner unjustifiably overreacted during an argument with her girlfriend. (*Id.*)

The record reflects that Petitioner and the victim, Myah Cole, were living together and in a romantic relationship. (*Id.*) On November 8, 2014, they attended a baby shower. (*Id.*) At the baby shower, the victim "grabbed [Petitioner's] butt in front of everybody," and "[Petitioner] didn't like it." (*Id.*) This began a verbal argument between Petitioner and the victim, which continued to escalate until Petitioner and the victim returned home; however, the argument did not become physical at that time. (*Id.*)

Later that day, Petitioner and the victim went to a bar with another couple. (*Id.*) At the bar, the other couple began kissing and the victim "made a smart comment," so Petitioner left the bar and went to her car in the parking lot. (*Id.*) At that point, Petitioner tried to leave the parking lot, but the victim followed her, stood in the way of her car, and began beating on the car window. (*Id.*) Petitioner let the victim into the car and drove home. (*Id.*) The State presented evidence that both Petitioner and the victim had been drinking. (*Id.*)

When Petitioner and the victim reached the parking lot of the apartment complex where they lived together, Petitioner "told [the victim] to get out of the car, and [] gave her [the keys to the apartment]." (*Id.*) Petitioner testified that the victim got out of the car, then got back into the

[2] Petitioner also sought immunity under S.C. Code Ann. § 16-11-440, prompting an immunity hearing before Judge Cole at which Petitioner testified. (Dkt. No. 15-1 at 10–65.)

car and started to hit Petitioner in the head. (*Id.*) Petitioner testified that she tried to fend the victim off of her, but "froze" and "didn't know what to do." (*Id.*) Petitioner testified that she had a gun under the seat of her car, so she grabbed it and shot the victim once, killing her. (*Id.*) Petitioner then exited the car and called 9-1-1. (*Id.*)

Petitioner testified that she feared being injured when she shot the victim. (*Id.*) Petitioner also testified that she could have unbuckled her seat belt, opened the door, and rolled into the parking lot, but she did not. (*Id.*) Petitioner further testified that she could have yelled for help, but she did not. (*Id.*) Petitioner testified that the victim did not have a gun, knife, or razor with her in the car. (*Id.*) Petitioner testified that both she and the victim had military training. (*Id.*)

When asked about her own injuries, Petitioner testified that her arms were red, but she did not have any other injuries on her arms, hands, or face. (*Id.*) Petitioner later testified that she had a "knot" on the side of her head. (*Id.*) When questioned by the police immediately following the incident, Petitioner stated that she did not have injuries she could point to, she should not have shot the victim, and she was not in such fear that her only option was to shoot the victim. (*Id.*)

At the conclusion of her trial, Petitioner was convicted as indicted for possession of a firearm during commission of or attempt to commit a violent crime and found guilty of the lesser-included offense of voluntary manslaughter, as opposed to murder. (*Id.*) Petitioner was sentenced to twenty-four years' imprisonment for the voluntary manslaughter offense, and five years' imprisonment for the weapons offense, with her sentences running concurrently. (*Id.*)

Petitioner directly appealed her convictions and sentences. Through appellate counsel, Petitioner raised the following issue on direct appeal:

> Did the court abuse its discretion by failing to grant Appellant immunity from prosecution pursuant to the Protection of Persons and Property Act where the decedent attacked Appellant in her occupied vehicle and Appellant shot the

> decedent in self-defense after the decedent continually beat Appellant in the head and repeatedly slammed her head into the car window?

(Dkt. No. 15-3 at 3–19.) The South Carolina Court of Appeals affirmed Petitioner's convictions and sentences without hearing argument, in an unpublished opinion filed on July 18, 2018. (*Id*. at 41–42.) The opinion reasoned as follows:

> Affirmed pursuant to Rule 220(b), SCACR, and the following authorities: S.C. Code Ann. § 16-11-440(C) (2015) ("A person who is not engaged in an unlawful activity and who is attacked in another place where he has a right to be . . . has no duty to retreat and has the right to stand his ground and meet force with force, including deadly force, if he reasonably believes it is necessary to prevent death or great bodily injury to himself . . . ."); *State v. Curry*, 406 S.C. 364, 370, 752 S.E.2d 263, 266 (2013) ("A claim of immunity under the [Protection of Persons and Property Act (the Act)] requires a pretrial determination using a preponderance of the evidence standard, which this court reviews under an abuse of discretion standard of review."); *State v. Douglas*, 411 S.C. 307, 316, 768 S.E.2d 232, 237 (Ct. App. 2014) ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." (quoting *State v. Pittman*, 373 S.C 527, 570, 647 S.E.2d 144, 166-67 (2007)); *Curry*, 406 S.C. at 371, 752 S.E.2d at 266 (finding the General Assembly did not intend for the Act to be construed to require a trial court to accept the accused's version of the underlying facts); *id*. ("[A] valid case of self-defense must exist, and the trial court must necessarily consider the elements of self-defense in determining a defendant's entitlement to the Act's immunity. This includes all elements of self-defense, save the duty to retreat."); *Douglas*, 411 S.C. at 318, 768 S.E.2d at 238-39 (providing the elements of self-defense save the duty to retreat are (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must believe he is in imminent danger of death or great bodily injury or actually be in such imminent danger; and (3) the defendant's fear must be reasonable); *id*. at 320 n.7, 768 S.E.2d at 239 n.7 ("[T]he standard for evaluating whether an accused had a reasonable belief that deadly force was necessary to prevent great bodily harm to himself is objective, rather than subjective."); *Curry*, 406 S.C. at 372, 752 S.E.2d at 267 ("Appellant's claim of self-defense presents a quintessential jury question, which, most assuredly, is not a situation warranting immunity from prosecution.").

(*Id*.) Petitioner did not request further review of the South Carolina Court of Appeals' decision. (*See generally* Dkt. No. 1.) The remittitur was issued on August 10, 2018. (Dkt. No. 15 at 4.)

On April 5, 2019, Petitioner filed a *pro se* application for post-conviction relief ("PCR"). (Dkt. No. 15-1 at 335–42.) Petitioner's PCR application raised ineffective assistance of counsel claims on the following grounds (verbatim):

> (1) Lawyer failed to BSP subpoena SLED toxicologist, his prejudice to do so resulted in jury not hearing relevant testimony as to how victim's alcohol level affected her reactions that night;
>
> (2) All evidence wasn't introduced to jury, only evidence relevant to prosecutions case was seen. My attorney failed to introduce critical evidence that showed bruising on me;
>
> (3) On several occasions officers and paramedics gave conflicting testimony of the position of the victim's body in the car. Pictures taken of the crime scene conflicts with their testimony.

(*Id*. at 342.) Petitioner then submitted an amended PCR application, raising ineffective assistance of counsel claims based on her trial counsel's alleged failure to: (1) effectively argue the application of South Carolina Code §§ 16-11-440 and 16-11-450; (2) prepare pretrial briefing regarding immunity and request a reasoned ruling under the preponderance of the evidence standard; (3) request jury instructions and object to the court's purportedly confusing self-defense instruction; and (4) argue for parole under South Carolina Code § 16-25-90. (*Id*. at 354.)

The PCR court held an evidentiary hearing in Petitioner's case on April 20, 2022. (*Id*. at 355–75; Dkt. No. 15-2 at 1–43.) The Honorable G.D. Morgan, Jr. presided over the hearing. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.) Petitioner was represented by Susannah Ross as her PCR counsel. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.) Chelsey Marto appeared on behalf of the State. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.) At the PCR hearing, Petitioner raised ineffective assistance of counsel claims based upon her trial counsel's purported failure to: (1) effectively argue the application of South Carolina Code §§ 16-11-440 and 16-11-450; (2) prepare pretrial briefing regarding immunity and request a reasoned ruling under the

preponderance of the evidence standard; (3) request jury instructions and object to the court's purportedly confusing self-defense instruction; (4) argue for parole under South Carolina Code § 16-25-90; (5) enter photographs of Petitioner's injuries and share the photographs with Petitioner; (6) address Petitioner's military history; (7) enter the victim's toxicology report; (8) enter the 911 call; (9) expand on Petitioner's head and neck injuries; (10) investigate and present Dustin Lawson's witness statement; (11) make a formal objection to the court's voluntary manslaughter instruction; and (12) clarify the victim's position in the car. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43, 53.) Petitioner testified on her own behalf. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.) Petitioner's trial counsel, Thomas Quinn, also testified. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.) After the conclusion of the PCR proceedings, Judge Morgan considered the evidence presented and took the matter under advisement before issuing a seventeen-page Order of Dismissal on March 16, 2023, which was filed on April 3, 2023. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43, 49–65.)

Petitioner, through appellate counsel, appealed Judge Morgan's decision and filed a Petition for Writ of Certiorari on October 27, 2023. (Dkt. No. 15-4.) In the Petition for Writ of Certiorari, Petitioner raised the following arguments (verbatim):

> (1) Whether the PCR court erred finding defense counsel was not ineffective for failure to properly preserve for appellate review the trial court's denial of immunity under the Protection of Persons and Property Act where counsel failed to request the trial court explain the basis of its denial of immunity by making specific findings of fact which was an abuse of the trial court's discretion?
>
> (2) Whether the PCR court erred finding defense counsel was not ineffective for failure to adequately prepare for petitioner's trial where counsel failed to present any other evidence supporting petitioner's claim of self-defense including: the recording of both 911 calls, decedent's toxicology report, and the testimony of Dustin Lawson all of which corroborated petitioner's trial testimony?

(*See generally id.*) The Petition for Writ of Certiorari was transferred to the South Carolina Court of Appeals pursuant to Rule 243(1) of the South Carolina Appellate Court Rules. (Dkt. No. 15-6.) The South Carolina Court of Appeals denied the Petition for Writ of Certiorari in an Order dated May 16, 2025. (Dkt. No. 15-7.) The remittitur was issued on June 3, 2025 and filed on June 9, 2025. (Dkt. No. 15-8.)

Petitioner then filed a *pro se* habeas petition in this Court on June 16, 2025. (Dkt. No. 1.) The Petition raises the following grounds for relief (verbatim):

**Ground One**: Ineffective assistance of trial counsel for failing to effectively argue 16-11-440 and 16-11-450

<u>Supporting Facts</u>: Counsel was ineffective where he failed to preserve the record by requesting the trial court act as the fact-finder in the case, resolve any disputes in the evidence, and apply those findings to the Act. Had counsel asked the trial court for the basis of the ruling the appellate court would have been able to conduct a meaningful review the denial of immunity and find petitioner satisfied the necessary elements of the Act and granted petitioner immunity under the Act.

**Ground Two**: Ms. Pearson was denied due process of law under the fourteenth and sixth Amendment of the United States Constitution when trial counsel failed to prepare pretrial brief regarding immunity and request a reasoned ruling under the preponderance of the evidence standard.

<u>Supporting Facts</u>: Circuit court did not address the elements of self-defense thereby making appellate review difficult. Failing to object to the judge's instruction that Ms. Pearson had a duty to retreat does not coincide with the stand your ground law.

**Ground Three**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to request jury instructions and object to confusing self-defense instruction.

Supporting Facts: The jury was being instructed to deliberate on whether Ms. Pearson had any ability to avoid the shooting. This should not have been instructed as the law in this case.

**Ground Four**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to enter photographs of injuries and share the photographs with Ms. Pearson.

Supporting Facts: Ms. Pearson did not receive any medical attention and was handcuffed from the moment police arrived on scene until the written and recorded statement were concluded hours later. She posed for various photos, but the only photos presented at trial was of her arms and face. Trial counsel failed to enter into evidence the photos of her holding her hair up showing the knot on her head and discoloration to the neck.

**Ground Five**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to expand on her head/neck injuries.

Supporting Facts: Ms. Pearson's trial counsel failed to enter into evidence photos that showed a knot under her hair and discoloration to the neck. These photo supported the fact that she was hit in the head. Trial counsel also failed to enter into evidence the report from the crime scene where a substance was found on the car window that was from Ms. Pearson's scalp. This would prove that her head was against the window of the car while her head was being beat against the window.

**Ground Six**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to enter the toxicology report into evidence at trial.

Supporting Facts: Ms. Pearson's trial counsel did not enter into evidence the toxicology report or subpoena toxicologist that he planned to call as a witness at trial. He relied instead on the state's witness list. Trial counsel admitted pre-trial decedents toxicology report was highly probative to her behavior during the incident which was also evident by the state's concern and attempt to suppress this evidence that was harmful to their prosecution.

**Ground Seven**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to enter 911 call into evidence at trial.

Supporting Facts: Trial counsel readily admitted during the post conviction relief evidentiary hearing this evidence would have made a world of difference. For the jury not to be able to hear the phone call immediately after the incident took away from Ms. Pearson's credibility.

**Ground Eight**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to call Dustin Lawson as a witness.

Supporting Facts: Mr. Lawson was never contacted by trial counsel to appear as a witness for the case. Mr. Lawson had knowledge, according to his police statement and 911 call of the facts of the case. Had Mr. Lawson been called as a witness at trial he would have testified to hearing Ms. Pearson's head being beaten against the car window. As well as the verbal altercation before the one shot was fired. Mr. Lawson's statement could have corroborated Ms. Pearson's testimony of the timeline of events from the night of the incident.

**Ground Nine**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth and fourteenth Amendment to the United States Constitution when trial counsel failed to make a formal objection to the voluntary manslaughter instruction.

Supporting Facts: There was no evidence presented from which a juror could reasonably infer Ms. Pearson acted in the sudden heat of passion. There is testimony from Ms. Pearson that she was being held down and repeatedly punched in the head and there is also a witness statement that corroborates Ms. Pearson's testimony. The evidence did not show that she lacked control over her actions or acted under an uncontrollable impulse to do violence. Despite her fear when she shot decedent one time she called 911 immediately after.

**Ground Ten**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States

Constitution when trial counsel failed to clarify the decedent's position in the car.

Supporting Facts: Trial counsel's failure to admit photos of decedents position in the car took away from Ms. Pearson's credibility. States witnesses Timberly Blake Stacy and Jeffrey Todd Shields stated that decedents feet were in the floor and her bottom was in the seat. Photos were being taken of the scene before the paramedics had even arrived and they have no photos of the decedent in that position. Also no one knows who took the decedent out of the sitting position to laying across the entire front section of the car. Clarifying this information would have shown that the decedent was on top of Ms. Pearson when the shot was fired. Not sitting in the seat as the prosecution kept reiterating. Car was also equipt with OnStar.

(*See generally id.*)

Respondent filed a Return and Memorandum, along with a Motion for Summary Judgment, in response to the Petition on October 14, 2025. (Dkt. Nos. 15, 16.) The next day, the Court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and the possible consequences if she failed to adequately respond to the motion. (Dkt. No. 17.) After requesting and receiving an extension of time to respond to Respondent's motion, Petitioner filed a response in opposition on December 11, 2025. (Dkt. No. 26.) Respondent replied on December 18, 2025. (Dkt. No. 27.) Accordingly, the motion before the Court has been fully briefed and is ripe for habeas review.

## LEGAL STANDARD

### I. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Rule 12, Rules Governing § 2254 Cases (stating courts may apply in habeas cases any of the Federal Rules of

Civil Procedure to the extent they are not inconsistent with statutes or the § 2254 rules). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth*., 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *The News & Observer Publ'g Co.*, 597 F.3d at 576 (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

## II. Habeas Standard of Review

Habeas corpus in federal court exists to guard against "extreme malfunctions in the state criminal justice systems." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Federal habeas is neither an alternative to state-court relief nor an additional chance to appeal erroneous state-court rulings. *See Harrington*, 562 U.S. at 102. That preference for, and deference to, state courts is borne out in the various constraints placed on federal courts. *See Shoop v. Hill*, 586 U.S. 45, 48 (2019) (per curiam) (stating § 2254 "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases"); *see also Woods v. Donald*, 575 U.S. 312, 316 (2015) (stating § 2254 "reflect[s] a presumption that state courts know and follow the law" (citation and internal quotation marks omitted)).

Since the Petitioner filed her petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of her claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322–23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal courts must also defer to state courts' factual determinations, which are presumed correct until the prisoner rebuts that presumption with clear and convincing evidence. § 2254(e)(1).

In addition, before state prisoners may try to clear those high hurdles, two rules steer them to first pursue all relief available in the state courts. *See* § 2254(b)(1). The first, known as exhaustion of remedies, requires a prisoner to present her claims to the highest state court with jurisdiction to decide them. *Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010). A federal court cannot grant a prisoner's habeas corpus petition until she exhausts

her state-court remedies. § 2254(b)(1), (c). The second rule, called procedural default, comes into play when a prisoner failed to present a claim to the state courts at the appropriate time and has no means of doing so now. *Stewart*, 701 F. Supp. 2d at 790. Federal courts may not consider a procedurally defaulted claim unless the prisoner shows either that she has cause for defaulting and that the alleged violation of federal law prejudiced her or that not addressing the claim would be a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In considering whether Petitioner should receive habeas relief under these standards, the undersigned has carefully considered the record before the Court.

## DISCUSSION

Respondent asserts that each ground for relief proffered in the Petition is procedurally defaulted and/or fails on the merits.[3] (*See generally* Dkt. No. 15.) For the reasons set forth in greater detail below, the undersigned agrees and therefore **RECOMMENDS** that Respondent's summary judgment motion (Dkt. No. 16) should be **GRANTED**.

### I. Procedural Default

Before considering the specific arguments pertaining to each of Petitioner's attempted grounds for relief, the undersigned finds a more in-depth summary of the doctrine of procedural default instructive. Courts often use the word "exhaustion" when defining "procedural default," but under the law the doctrine of procedural default is separate from the exhaustion requirement in the habeas context. As to exhaustion, 28 U.S.C. § 2254(b)(1) requires that a petitioner exhaust her remedies in state court before a habeas petition may be granted. "In order to exhaust [] collateral claims in state court, a South Carolina habeas corpus petitioner must pursue a direct appeal and/or file an application for relief under the South Carolina Post Conviction Procedure

[3] The parties agree that the instant habeas Petition was timely filed. (*See generally* Dkt. Nos. 15, 26, 27.)

Act, S.C. Code Ann. §§ 17-27-10–160." *Chronister v. South Carolina*, No. 2:08-cv-3194-HMH-RSC, 2009 WL 1444507, at *9 (D.S.C. May 20, 2009).

In addition to fully pursuing the remedies available in state court, a petitioner must also have previously presented to the state courts the individual claims she wishes the federal court to review in the habeas action. If she has not properly presented the claim to a state court for adjudication, it is deemed procedurally defaulted. A claim is deemed procedurally defaulted if a state court has rejected it based on an independent and adequate state procedural rule. *See Coleman*, 501 U.S. at 729 ("The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."). But also, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000).

In *Longworth v. Ozmint*, 377 F.3d 437 (4th Cir. 2004), the Fourth Circuit explained the policy behind the procedural default doctrine and also described what it means for a claim to have been properly presented to the state court:

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.* at 845. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v.*

> *Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

*Id.* at 448. To overcome procedural default and have a claim considered by the federal habeas court, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

With these standards in mind, the undersigned turns to Petitioner's specific claims.

### A. Grounds Three, Four, Five, Nine and Ten

Respondent asserts that Petitioner's third, fourth, fifth, ninth and tenth grounds for relief are procedurally barred because such grounds were not raised on appeal to the South Carolina appellate courts. (Dkt. No. 15 at 9–10.) As noted above, Petitioner's third, fourth, fifth, ninth and tenth grounds for relief allege (verbatim):

> **Ground Three**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to request jury instructions and object to confusing self-defense instruction.
>
> <u>Supporting Facts</u>: The jury was being instructed to deliberate on whether Ms. Pearson had any ability to avoid the shooting. This should not have been instructed as the law in this case.
>
> **Ground Four**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to enter photographs of injuries and share the photographs with Ms. Pearson.
>
> <u>Supporting Facts</u>: Ms. Pearson did not receive any medical attention and was handcuffed from the moment police arrived on scene until the written and recorded statement were concluded hours later. She posed for various photos, but the only photos presented at trial was of her arms and face. Trial counsel failed to enter into evidence the photos of her holding her hair up showing the knot on her head and discoloration to the neck.

**Ground Five**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to expand on her head/neck injuries.

Supporting Facts: Ms. Pearson's trial counsel failed to enter into evidence photos that showed a knot under her hair and discoloration to the neck. These photo supported the fact that she was hit in the head. Trial counsel also failed to enter into evidence the report from the crime scene where a substance was found on the car window that was from Ms. Pearson's scalp. This would prove that her head was against the window of the car while her head was being beat against the window.

**Ground Nine**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth and fourteenth Amendment to the United States Constitution when trial counsel failed to make a formal objection to the voluntary manslaughter instruction.

Supporting Facts: There was no evidence presented from which a juror could reasonably infer Ms. Pearson acted in the sudden heat of passion. There is testimony from Ms. Pearson that she was being held down and repeatedly punched in the head and there is also a witness statement that corroborates Ms. Pearson's testimony. The evidence did not show that she lacked control over her actions or acted under an uncontrollable impulse to do violence. Despite her fear when she shot decedent one time she called 911 immediately after.

**Ground Ten**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to clarify the decedent's position in the car.

Supporting Facts: Trial counsel's failure to admit photos of decedents position in the car took away from Ms. Pearson's credibility. States witnesses Timberly Blake Stacy and Jeffrey Todd Shields stated that decedents feet were in the floor and her bottom was in the seat. Photos were being taken of the scene before the paramedics had even arrived and they have no photos of the decedent in that position. Also no one knows who took the decedent out of the sitting position to laying across the entire front section of the car. Clarifying this information

> would have shown that the decedent was on top of Ms. Pearson when the shot was fired. Not sitting in the seat as the prosecution kept reiterating. Car was also equipt with OnStar.

(*See generally* Dkt. No. 1.)

Upon careful review of the record, the undersigned agrees with Respondent and finds that these claims are procedurally barred. Indeed, Petitioner did not fully pursue the claims underlying Grounds Three, Four, Five, Nine and Ten.

As noted, Petitioner did not appeal the South Carolina Court of Appeals' decision on her direct appeal, and she raised only two grounds in the Petition for Writ of Certiorari she filed following Judge Morgan's decision on her PCR application: (1) whether the PCR court erred in finding defense counsel was not ineffective where he failed to properly preserve for appellate review the trial court's denial of immunity under the Protection of Persons and Property Act, given that counsel failed to request that the trial court explain the basis of its denial of immunity by making specific findings of fact, and (2) whether the PCR court erred in finding defense counsel was not ineffective where he failed to adequately prepare for petitioner's trial in that he did not present appropriate evidence supporting Petitioner's self-defense claim, including 911 call recordings, the victim's toxicology report, and witness testimony that would corroborate Petitioner's own trial testimony. (*See generally* Dkt. No. 15-4.)

Clearly, Petitioner did not raise the claims underlying Grounds Three, Four, Five, Nine and Ten on appeal to the South Carlina appellate courts, and such grounds for relief are therefore procedurally defaulted. (*See generally id.*; *see also* Dkt. No. 1.) In fact, Petitioner appears to concede that Grounds Three, Four, Five, Nine and Ten are procedurally defaulted, but fails to articulate cause and prejudice for such procedural default, or to sufficiently explain how this Court's failure to consider these grounds for relief would result in a fundamental miscarriage of

justice. (*See* Dkt. No. 26 at 5); *see also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Rather, Petitioner states only that she "was appointed counsel by indigent defense and was never made aware of the grounds . . . being presented in the writ of certiorari." (Dkt. No. 26 at 5.) Petitioner contends that "[h]ad [she] known . . . before the documents were submitted, she would have asked for all grounds presented in the PCR to be added to the petition for writ of certiorari, because all grounds are important . . . ." (*Id.*) However, as Respondent correctly notes, Petitioner's argument that her appellate counsel improperly failed to pursue all grounds for relief "is insufficient as a matter of law." (Dkt. No. 27 at 1.)

Typically, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" is not a ground for relief under § 2254. 28 U.S.C. § 2254(i); *see also Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("[A]n attorney's ignorance or inadvertence in a [PCR] proceeding does not qualify as cause to excuse a procedural default."). Nevertheless, in *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), the United States Supreme Court created a narrow exception permitting inadequate assistance of counsel at initial-review collateral proceedings to establish cause for a procedurally defaulted claim of ineffective assistance of trial counsel where:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective-assistance-of-counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (alteration in original) (quoting *Martinez*, 566 U.S. at 14–16). The narrow exception set forth in *Martinez* does not, however, apply to purported errors at the appellate level in collateral proceedings. *See Davila v. Davis*, 582 U.S. 521, 522 (2017) ("The equitable concerns addressed in *Martinez* do not apply to appellate ineffectiveness claims."). Thus, *Martinez* is not applicable here and cannot excuse the procedural default of Grounds Three, Four, Five, Nine and Ten. *See Jenkins v. Warden, Allendale Corr. Inst.*, No. 2:23-cv-04993-SAL-MGB, 2025 WL 1032251, at *8 (D.S.C. Jan. 28, 2025) ("To the extent Petitioner asserts that his procedural default of Ground Two or Four should be excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), this argument fails because *Martinez* does not apply to PCR appellate counsel."), *adopted*, 2025 WL 957403 (D.S.C. Mar. 31, 2025). Accordingly, Grounds Three, Four, Five, Nine and Ten are procedurally defaulted and must therefore be **DISMISSED**.

### B. Additional Procedurally Barred Claims

Respondent next argues that certain portions of Petitioner's remaining grounds for relief are also procedurally barred because Petitioner failed to raise them on appeal to the South Carolina appellate courts and/or did not raise them during her PCR proceedings. (Dkt. No. 15 at 10–11.) More specifically, Respondent claims that: (1) "Petitioner did not raise a 'Due Process' claim on appeal . . . but an IAC claim for failure to prepare a pretrial brief regarding immunity and request a reasoned ruling under the preponderance of the evidence standard," (2) Petitioner did not raise on appeal her "claim counsel should have objected to the self-defense charge" asserted in the last sentence of Ground Two, and (3) during the PCR proceedings, "Petitioner did not allege that counsel should have introduced a police report that debris [allegedly a portion of Petitioner's scalp] was found on the window of the car," or that "counsel should have introduced witness Lawson's 911 call," but instead only alleged that counsel should have introduced her own 911 call and that

her counsel should have somehow introduced Lawson's written statement at trial. (*Id.*) Because Petitioner failed to properly raise these claims in state court, Respondent contends that they should be dismissed. (*Id.*) Again, the undersigned agrees with Respondent.

Review of the record indicates that Petitioner did not raise on appeal a Due Process claim or a claim that her trial counsel should have objected to the trial court's self-defense charge. (Dkt. No. 15-4.) These portions of Ground Two are therefore procedurally defaulted.

What is more, the record reveals that Petitioner did not allege during her PCR proceedings that her trial counsel should have introduced a police report depicting debris on the car window (purportedly of her skull as a result of her head injury). (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.) Accordingly, that portion of Ground Five is procedurally defaulted for this alternative reason.

Finally, to the extent Petitioner attempts to claim in Ground Eight that her trial counsel should have introduced Dustin Lawson's 911 call at trial, this claim is also procedurally defaulted because Petitioner did not raise this argument at any point during her PCR proceedings. (Dkt. No. 15-1 at 355–75; Dkt. No. 15-2 at 1–43.)

Having determined that Petitioner's third, fourth, fifth, ninth and tenth grounds for relief are procedurally defaulted, as are portions of Petitioner's second and eighth ground for relief, the undersigned turns to the merits of Petitioner's first, sixth, and seventh grounds for relief, and the remaining portions of Petitioner's second and eighth grounds for relief, below.

**II. Merits**

In each of Petitioner's remaining claims, she contends that she was denied effective assistance of trial counsel. (*See generally* Dkt. No. 1.) Petitioner, as a criminal defendant, had a right to effective assistance of counsel under the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 686 (1984). Petitioner may prove ineffective assistance of counsel by showing that her attorney's performance was deficient, and that such deficiency prejudiced her. *Id.* at 687. An attorney's performance is deficient if it was unreasonable under the circumstances of the case and under then-prevailing professional norms. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Kimmelman*, 477 U.S. at 384.

*Strickland* is highly deferential to counsel, and § 2254(d) is highly deferential to state courts. *Harrington*, 562 U.S. at 105. That means when a state court has adjudicated an ineffective assistance claim on the merits, this Court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In other words, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that [Petitioner's] counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Where, as here, habeas claims are considered on the merits in state court proceedings, the Court must apply a highly deferential standard of review.[4] *See* 28 U.S.C. § 2254(d). The Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court

---

[4] Subsection 2254(d)'s standards are to be applied to the decision from the highest state court to decide the claim at issue on the merits. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the highest state court rules summarily, the federal habeas court should "look through" that unexplained decision to the last state-court decision that provides a relevant rationale, and "should then presume that the unexplained decision adopted the same reasoning." *Id.*; *see also Steen v. Dismukes*, No. 24-6409, 2026 WL 1968601, at *3 (4th Cir. July 8, 2026) (noting that a federal habeas court should "look through" an unexplained appellate-court decision to the lower court's reasoning and presume that the higher court adopted the same where a state-appellate-court decision affirms a reasoned lower-court decision without explanation). In this case, the PCR court was the only state court to issue a reasoned decision on Petitioner's claims. As such, the undersigned considers the PCR court's reasoning in analyzing Petitioner's grounds for relief.

of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. *Williams*, 529 U.S. at 406. A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

In other words, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *see also Steen v. Dismukes*, No. 24-6409, 2026 WL 1968601, at *5 (4th Cir. July 8, 2026) (noting that a federal habeas court's job "is to ask whether all fairminded jurists would agree that the state court's decision contravened or unreasonably applied Supreme Court holdings"). "This standard is intentionally difficult to meet, stopping just short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Langford v. Stonebreaker*, No. 24-7118, 2026 WL 1902555, at *4 (4th Cir. July 2, 2026) (internal quotation marks omitted) (referencing *Harrington*, 562 U.S. at 102).

This Court must presume state court findings correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1). Further, this Court is bound by a state court's interpretation

of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus").

Before considering Petitioner's ineffective assistance of counsel claims, Judge Morgan aptly summarized pertinent testimony from Petitioner and her trial counsel during the PCR evidentiary hearing. (Dkt. No. 15-2 at 53–58.) More specifically, Judge Morgan recounted:

> ***Applicant Testimony***
>
> Applicant testified that she understood the proceeding. She stated she thought she should have been afforded immunity. She stated she was numb from the shooting and that she did [not] "have any feelings after that" because she lost her best friend. She stated that her head had been beaten by the victim prior to the shooting. She stated that photographs of her head and neck injuries were not entered at trial and that she did not recall seeing them in discovery. She stated that at the immunity hearing, Applicant talked about being frozen and how she thought the victim would have killed her if she did not fire first. She stated that she did not think she had another choice regarding the shooting. She testified that though she said at the immunity hearing and trial that she thought she could have handled the situation differently, she now believes that is not the case. She stated that the victim's military experience was not brought out at trial. Applicant testified that she wanted the victim's toxicity report in at trial, but that this was not permitted into evidence. She stated she never talked to Counsel about parole. She stated that there had been no prior physical altercations between her and the victim, but that the abuse she suffered at the hands of the victim was more emotional. She testified that she called 911, but never listened to the call. She stated that her head injuries were never expanded upon at trial. She stated that Dustin Lawson's witness statement was not brought out at trial but thought it would have been helpful because it would substantiate her side of the story. She stated that she feared for her life and had a license to carry. She stated she never would have used the weapon unless she feared for her life.
>
> On cross-examination, Applicant stated she testified at trial. She stated she testified at trial that she had a knot on the side of her head. Even with this testimony elicited at trial, Applicant testified the jury found her guilty. She stated that she and the victim were about the same size. She testified that there was no history of physical violence between the two of them before the incident. She stated that she testified to having one beer the day of the incident because she was the driver. She stated that she testified that she had her seat belt on and could not have done anything else in the moment. She testified that the victim was drinking that day and that this was a contributing factor to her aggression. She testified that Counsel went over all questions she had regarding the discovery.

### *Counsel Testimony*

Counsel testified that he received the witness statement from Dustin Lawson as a part of the discovery. Counsel testified that the trial occurred in 2016 and that he met with Applicant before trial. He stated he went over her statements given to law enforcement with her. He stated that the immunity was denied at the immunity hearing. He stated he did not object to the ruling. He stated that there was a heated verbal argument in chambers between himself and the State when the State requested a lesser-included offense instruction to voluntary manslaughter. He stated he did not recall the 911 call being published to the jury. Counsel testified he did not remember talking about the banging of Applicant's head against the car window during closing arguments. He stated that he did not offer any pictures of Applicant's face into evidence at trial. He stated he did not recall exactly what the State admitted into evidence at trial. Counsel testified that he could see how the jury charge could be somewhat confusing. He stated that Applicant had no duty to retreat but that the jury was charged that an element of danger existed. He testified that the State argued at trial that Applicant could have left []. He stated that he did not make a formal object[ion] to the voluntary manslaughter charge on the record. He stated that there was not an objection made to the self-defense charge. He stated that because no objections were made, nothing was preserved for appellate review on this ground. Counsel testified that the victim did not have any bruising or signs of injury beyond the gunshot wound.

On cross-examination, Counsel testified that chances of Judge Cole granting immunity at the immunity hearing were slim. He stated that, to the best of his knowledge, Judge Cole had never granted immunity in any case before. He testified that the State's argument had always been that Applicant overreacted and brought a gun to a fist fight. He testified that he received a copy of the State's potential witness list, but that the State ultimately decided to call about half the people on the list. He testified that the toxicologist was on the potential witness list. Counsel testified that it was widely accepted that the victim was drinking the day of the incident. He testified that he would not consider Applicant a battered woman. He stated he did not see anything improper with the jury charges and that he did not think an objection to the jury charges would have made a difference on the outcome at trial. He stated that a plea offer to voluntary manslaughter was made but was rejected. Counsel testified that the State's request for a voluntary manslaughter charge was a surprise by the State. He stated he objected to the charge in chambers, but Judge Cole overruled the objection. Counsel stated he spoke to some potential witnesses. He stated that he thought the 911 call could have made a difference at trial and was unsure why he did not enter it into evidence, because it could have backed up Applicant's testimony. Counsel stated he was unsure whether the position of the victim in the car after being shot made a difference at trial. Counsel testified that Applicant presented as a good witness but had wished she had done some things differently while on the stand at both the immunity hearing and the trial. On re-direct, Counsel testified he thought the 911 call and witness statement would have been helpful at trial.

(Dkt. No. 15-2 at 53–56.)

Judge Morgan then set forth the appropriate legal standard for Petitioner's ineffective assistance of counsel claims before addressing the specific arguments set forth in Petitioner's grounds for relief, as recounted below.

### A. Grounds One and Two

To reiterate, Petitioner's first and second grounds for relief assert the following:

**Ground One**: Ineffective assistance of trial counsel for failing to effectively argue 16-11-440 and 16-11-450

Supporting Facts: Counsel was ineffective where he failed to preserve the record by requesting the trial court act as the fact-finder in the case, resolve any disputes in the evidence, and apply those findings to the Act. Had counsel asked the trial court for the basis of the ruling the appellate court would have been able to conduct a meaningful review the denial of immunity and find petitioner satisfied the necessary elements of the Act and granted petitioner immunity under the Act.

**Ground Two**[5]: Ms. Pearson was denied due process of law under the fourteenth and sixth Amendment of the United States Constitution when trial counsel failed to prepare pretrial brief regarding immunity and request a reasoned ruling under the preponderance of the evidence standard.

Supporting Facts: Circuit court did not address the elements of self-defense thereby making appellate review difficult. Failing to object to the judge's instruction that Ms. Pearson had a duty to retreat does not coincide with the stand your ground law.

(*See generally* Dkt. No. 1.)

[5] As explained in Section I.B. *supra*, the undersigned need not address the due process portion of Ground Two or Petitioner's contention that "[f]ailing to object to the judge's instruction that Ms. Pearson had a duty to retreat does not coincide with stand your ground law," as these attempted claims are procedurally defaulted. Rather, Ground Two must be construed as an ineffective assistance of counsel claim in order to be properly considered by this Court. The undersigned has limited the discussion of Ground Two accordingly.

Respondent argues that Petitioner's first and second grounds for relief lack merit, as the PCR court adequately addressed the issues set forth in these grounds, and the PCR court's determination of the same is entitled to deference from this Court. (Dkt. No. 15 at 18–24.) In considering the arguments underlying these grounds for relief, Judge Morgan explained:

> ***Failing to Effectively Argue 16-11-440 & 16-11-450***
>
> Applicant claims Counsel was ineffective for failing to effectively argue for immunity under the Protection of Persons and Property Act. Counsel argued much of what Applicant alleges she wanted raised and pursued an immunity hearing before the trial. The fact that Counsel was unsuccessful in his argumentation should not render him deficient. Additionally, this Court declines to find that any additional argumentation presented at the PCR hearing would have changed the outcome. This is particularly true because of Counsel's credible testimony that as an experienced attorney, he was under the impression that Judge Cole had never granted immunity before and preferred sending things to the jury. Accordingly, relief is denied.
>
> ***Failing to Prepare Pre-Trial Brief***
>
> Applicant claims Counsel was ineffective for failure to prepare a pre-trial brief regarding immunity. This Court finds Counsel acted reasonably in electing to present his immunity argument orally instead and fails to see how Applicant was in any way prejudiced on this ground. Accordingly, relief is denied.
>
> ***Failure to Request Reasoned Ruling on Record***
>
> Applicant claims Trial Counsel was ineffective for failure to object to the Trial Court's failure to make full and complete findings of fact and conclusions of law for the elements of self-defense as applied under a claim pursuant to the Protection of Persons and Property Act. "[T]he trial court must necessarily consider the elements of self-defense in determining a defendant's entitlement to the Act's immunity. This includes all elements of self-defense, save the duty to retreat." *State v. Curry*, 406 S.C. 364, 371, 752 S.E.2d 263, 266 (2013). Though determining each element was analyzed by the Court when conducting appellate or post-conviction review and would have been made simpler if conducted explicitly on the record, this requirement was not clarified until several years after the immunity hearing was conducted. *State v. Glenn*, 429 S.C. 108, 123, 838 S.E.2d 491, 499 (2019) (finding that the circuit court should at least make specific findings on the elements on the record); *see also Thornes v. State*, 310 S.C. 306, 210, 426 S.E.2d 764, 766 (1993) ("The relevant time frame for analysis is when the alleged ineffectiveness occurred, not several years later when a witness modifies her original statements.").

> Counsel has never been required "to be clairvoyant or anticipate changes in the law which were not existent at the time of trial." *Gilmore v. State*, 314 S.C. 453, 456, 445 S.E.2d 454, 457 (1994), *overruled on other grounds by Brightman v. State*, 336 S.C. 348, 520 S.E.2d 614 (1999). *See generally e.g. Thornes v. State*, 310 S.C. 306, 309-10, 426 S.E.2d 764, 765-66 (1993) (citations omitted); *Robinson v. State*, 308 S.C. 74, 417 S.E.2d 88 (1992); *Arnette v. State*, 306 S.C. 556, 413 S.E.2d 803 (1992); *Kirkpatrick v. State*, 306 S.C. 359, 412 S.E.2d 389 (1991).
>
> This Court finds Counsel acted reasonably. There was no requirement that explicit findings be placed on the record at the time of trial and Counsel was not expected to anticipate this change in the law. Additionally, there has been no showing that failure to make specific findings impacted appellate court proceedings. Specifically, in the Court of Appeals' order, the court did not find that the issue of immunity was not properly preserved for appellate review. Rather, it simply chose to affirm the findings of the lower court. Accordingly, there has been no error on the part of Counsel that impacted circuit or appellate court proceedings concerning the denial of immunity, no prejudice is found, and relief denied accordingly.

(Dkt. No. 15-2 at 58–60.)

Keeping in mind that this Court's review of a state court's adjudication of the merits of an ineffective assistance claim is indeed "doubly deferential," *Knowles*, 556 U.S. at 123, the undersigned finds no error in the state court's determinations. At the outset, the PCR court plainly considered the cumulative record before reasonably concluding that Petitioner was not prejudiced by her trial counsel's alleged errors. Further, the PCR court based its determinations regarding Petitioner's first and second grounds for relief partly on trial counsel's credible testimony at the PCR hearing, and such determinations are entitled to deference from this Court. *See Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). What is more, Petitioner has submitted no meaningful argument as to how the state court's conclusions qualify as legally or factually unreasonable, and such failure precludes

relief in this Court. (*See generally* Dkt. Nos. 1, 26.) In the absence of any evidence lending to a contrary result, this Court must presume the state court's findings are correct. 28 U.S.C. § 2254(e)(1).[6] The undersigned therefore **RECOMMENDS** that Petitioner's first and second grounds for relief lack merit and should be **DISMISSED**.

### B. Grounds Six, Seven, and Eight[7]

Respondent similarly argues that Petitioner's sixth, seventh, and eighth grounds for relief lack merit because the PCR court adequately addressed these issues. (Dkt. No. 15 at 24–30.) As noted, Petitioner's sixth, seventh, and eighth grounds for relief allege the following (verbatim):

**Ground Six**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to enter the toxicology report into evidence at trial.

<u>Supporting Facts</u>: Ms. Pearson's trial counsel did not enter into evidence the toxicology report or subpoena toxicologist that he planned to call as a witness at trial. He relied instead on the state's witness list. Trial counsel admitted pre-trial decedents toxicology report was highly probative to her behavior during the incident which was also evident by the state's concern and attempt to suppress this evidence that was harmful to their prosecution.

**Ground Seven**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to enter 911 call into evidence at trial.

---

6 What is more, any claim by Petitioner seeking relief regarding purported violations of the South Carolina Persons and Property Act must be dismissed because it is not a cognizable claim on which habeas relief may be granted. A district court may entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). However, claims regarding the South Carolina Persons and Property Act contemplate violation of state law, not the Constitution or laws or treaties of the United States. *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("It is beyond the mandate of federal habeas courts . . . to correct the interpretation by state courts of a state's own laws."). In any event, Petitioner fails to meaningfully explain how or why the state court erred in applying this specific state law. (*See generally* Dkt. Nos. 1, 26.)

7 As noted above, any attempt by Petitioner to claim in Ground Eight that her trial counsel should have introduced Dustin Lawson's 911 call at trial is procedurally defaulted. The undersigned has limited the discussion of Ground Eight accordingly.

Supporting Facts: Trial counsel readily admitted during the post conviction relief evidentiary hearing this evidence would have made a world of difference. For the jury not to be able to hear the phone call immediately after the incident took away from Ms. Pearson's credibility.

**Ground Eight**: Ms. Pearson was denied her right to effective assistance of counsel under the sixth Amendment to the United States Constitution when trial counsel failed to call Dustin Lawson as a witness.

Supporting Facts: Mr. Lawson was never contacted by trial counsel to appear as a witness for the case. Mr. Lawson had knowledge, according to his police statement and 911 call of the facts of the case. Had Mr. Lawson been called as a witness at trial he would have testified to hearing Ms. Pearson's head being beaten against the car window. As well as the verbal altercation before the one shot was fired. Mr. Lawson's statement could have corroborated Ms. Pearson's testimony of the timeline of events from the night of the incident.

(*See generally* Dkt. No. 1.) In considering these claims for relief, Judge Morgan determined:

***Failure to Enter Toxicology Report***

Applicant claims Counsel was ineffective for failure to enter the victim's toxicology report. Counsel credibly testified he did not subpoena and plan to call the toxicologist because they were on the State's witness list. This is reasonable and Counsel is not deficient for failing to subpoena them themselves. Additionally, there was ample testimony at the trial supporting the fact that victim had been drinking that day. This Court declines to find that the report would have added anything to the trial that would have led to a different result. Accordingly, relief is denied.

***Failure to Enter 911 Call***

Applicant claims Counsel was ineffective for failure to enter the 911 call. This Court finds that the call would not have affected the outcome at trial because the trial ultimately boiled down to a matter of Applicant's credibility to the jury. A 911 call from Applicant does not impact that determination of credibility. Accordingly, relief is denied.

***Dustin Lawson's Witness Statement***

> Applicant claims Counsel was ineffective for failure to present Lawson's witness statement. Applicant has failed to meet [her] burden of proving prejudice. *See Glover v. State*, 318 S.C. 496, 498-99, 458 S.E.2d 538, 540 (1995) (To show counsel was ineffective by failing to call a witness, the witness(es) must be produced at the PCR evidentiary hearing or their testimony must otherwise be presented consistent with the rules of evidence); *Clark v. State*, 315 S.C. 385, 434 S.E.2d 266 (1993) (Mere speculation regarding the witness's testimony is insufficient to establish prejudice). Accordingly, relief is denied.

(Dkt. No. 15-2 at 62–64.)

Again, the undersigned finds no error in the state court's determinations. Bearing in mind the deferential standard under which this Court must review the state court's adjudication of Petitioner's claims in this instance, the undersigned finds that the PCR court aptly considered Petitioner's arguments, provided an accurate interpretation of the facts, and reasonably applied the law. (*Id*.) After considering the facts of the case and the testimony presented at the PCR evidentiary hearing, the PCR court ultimately determined that Petitioner could not show she was prejudiced by her trial counsel's purported ineffective assistance in failing to enter the victim's toxicology report, the 911 call, and/or to call Dustin Lawson as a witness at trial because the evidence at issue was cumulative and any alleged impact on the outcome of Petitioner's trial was speculative. (*See generally id*.) As with her first and second grounds for relief, Petitioner submits no meaningful argument as to how the PCR court's determination of these issues qualifies as legally or factually unreasonable. (*See generally* Dkt. Nos. 1, 26.) Instead, Petitioner relies on mere speculation and her personal disagreement with the PCR court's findings, neither of which are sufficient bases for relief in this Court.[8] (*See generally* Dkt. Nos. 1, 26.) Accordingly, undersigned **RECOMMENDS** that Petitioner's sixth, seventh, and eighth grounds for relief should be **DISMISSED**.

---

[8] To the extent Petitioner argues that the PCR court's rulings must be overturned because her trial counsel testified at the PCR evidentiary hearing that he erred in failing to submit the victim's toxicology report and the 911 call, and/or because her trial counsel failed to articulate a "strategy" to corroborate her trial testimony, any such

Ultimately, the record evidence provides reasonable support for the PCR court's determination that Petitioner was not prejudiced by any of trial counsel's alleged errors, (*see* Dkt. No. 15-1 at 1–334, 355–75; Dkt. No. 15-2 at 1–43, 49–65), and Petitioner has failed to demonstrate the type of "extreme malfunction[] in the state criminal justice system[]" against which federal habeas relief is designed to protect. *Harrington*, 562 U.S. at 102 (cleaned up). As such, the undersigned **RECOMMENDS** that Respondent's summary judgment motion (Dkt. No. 16) should be **GRANTED** and the instant Petition (Dkt. No. 1) should be **DISMISSED IN FULL**.

**Certificate of Appealability**

If the Respondent's summary judgment motion is granted, the District Judge will need to decide whether to issue a certificate of appealability. *See* Rule 11(a), Rules Governing § 2254 Cases. A certificate may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been denied on the merits, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (citation and quotation marks omitted). The undersigned sees no reason to grant a certificate of appealability and would, therefore, recommend denying the certificate of appealability.

---

arguments are insufficient to establish that the PCR court's findings on these issues were unreasonable. (*See generally* Dkt. No. 26); *see also* 28 U.S.C. § 2254(d) (noting that a federal court may not grant habeas relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT** Respondent's Motion for Summary Judgment (Dkt. No. 16). The undersigned further **RECOMMENDS** that the Court **DISMISS** this case with prejudice and **DECLINE** to issue a certificate of appealability.

**IT IS SO RECOMMENDED**.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 21, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).